## Carbaugh v. Prudential Property and Casualty Insurance Co.

C.P. of Franklin County, no. A.D. 1994-111.

*Charles E. Ganley,* for plaintiff.
*Karl A. Hildabrand,* for defendant.

HERMAN, *J.,* October 5, 1999—

## INTRODUCTION

Before the court is a motion for summary judgment filed by the defendant Prudential Property and Casualty Insurance Company on August 13, 1999 to the complaint filed by the plaintiff Doris Carbaugh. The plaintiff, who was an insured of the defendant, was injured in an automobile accident. She brings claims of breach of contract and bad faith arising out of the defendant's initial refusal to pay medical bills for treatment she underwent after the accident. We have reviewed the record and the briefs. For the reasons which follow, we will grant the defendant's motion.

## BACKGROUND

The plaintiff's accident occurred on January 21, 1993. She began treating with various physicians and submitted bills to the defendant for payment pursuant to her insurance policy which provided for first-party medical benefits. The defendant referred her claim to Claims Review Associates, a peer review organization. Dr.

Leonard B. Kamen D.O., the physician engaged by Claims Review Associates to perform a peer review of the plaintiff's file, issued a report to the defendant on or about September 21, 1993 in which he found the plaintiff had received more weeks of therapy than was justified by the documentation submitted by the treating physicians.[1] One of those physicians, Dr. Jay D. Bayer D.O., received a copy of the report and requested that the defendant reconsider Dr. Kamen's conclusions. The defendant requested Dr. Bayer to submit any additional information he believed was important to the plaintiff's claim file. Dr. Bayer forwarded a letter dated October 26, 1993 to Belinda Finley, an employee of the defendant who was assigned to handle the plaintiff's file.

The defendant referred the file to Claims Review Associates for a second peer review. Dr. Bayer's letter was part of the file at that point. The PRO engaged Dr. Earl J. Wenner Jr. D.O. who issued a peer review reconsideration report on February 18, 1994.[2] Dr. Wenner concurred with Dr. Kamen's finding that some treatment undertaken by the plaintiff's physicians had been appropriate and necessary to treat her injuries, but that some therapy had been excessive and other available treatments had not been undertaken or were undertaken only after a delay. Dr. Wenner concluded that it was unclear whether all of the plaintiff's injuries were in fact causally related to the automobile accident. Specifically, he found that the documentation from the treating physicians was somewhat

---

1. Dr. Kamen's report appears in the record as exhibit A attached to the defendant's answer to the complaint.

2. Dr. Wenner's report appears in the record as exhibit I attached to the complaint. Dr. Bayer's letter of October 26, 1993 which Dr. Wenner references does not itself appear in the record.

incomplete, and certain tests had not been performed which might have shed light on the nature and origin of the plaintiff's symptoms. Dr. Wenner believed there was a strong probability the plaintiff had preexisting conditions. Based on Dr. Wenner's report, the defendant again refused to pay some of the plaintiff's bills.

The plaintiff filed a writ of summons on March 18, 1994. The complaint was filed on June 2, 1994. The defendant engaged Dr. William P. Graham III M.D. to perform an independent medical examination of the plaintiff. In his report of September 21, 1995, Dr. Graham stated he was unaware of any evidence suggesting the plaintiff had preexisting conditions not attributable to the car accident and opined that her condition was compatible with the injuries she sustained in that accident. He also indicated she needed further treatment, specifically surgery. After reviewing Dr. Graham's IME report, the defendant paid the plaintiff's outstanding medical bills.[3]

While Dr. Graham's report was pending, the defendant filed preliminary objections and the court ruled on September 13, 1995. Preliminary objections were also filed to the amended complaint and a second opinion was issued on April 11, 1996. A second amended complaint was filed on April 30, 1996.

## DISCUSSION

### Breach of Contract Claim

The plaintiff alleges the defendant breached its insurance contract to pay first-party benefits for reasonable and nec-

---

3. Dr. Graham's IME report appears in the record as exhibit J attached to the complaint.

essary medical treatment for injuries she sustained in the car accident by refusing to pay her medical bills. The plaintiff also alleges the defendant acted in bad faith in refusing to pay those bills. The defendant asserts it is entitled to a grant of summary judgment on both the contract and bad faith claims.

Summary judgment is governed by Pennsylvania Rule of Civil Procedure 1035.2 which states:

"After the relevant pleadings are closed, but within such time as not to unreasonably delay trial, any party may move for summary judgment in whole or in part as a matter of law

"(1) whenever there is no genuine issue of any material fact as to a necessary element of the cause of action or defense which could be established by additional discovery or expert report, or

"(2) if, after the completion of discovery relevant to the motion, including the production of expert reports, an adverse party who will bear the burden of proof at trial has failed to produce evidence of facts essential to the cause of action or defense which in a jury trial would require the issues to be submitted to a jury."

There is no issue to be submitted to a jury where the record contains insufficient evidence of facts to make out a prima facie case. "[T]he mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for a trial. . . . We have a summary judgment rule in this Commonwealth in order to dispense with a trial of a case . . . where a party lacks the beginnings of evidence to establish . . . a material issue." *Ertel v. Patriot-News Co.*, 544 Pa. 93, 100, 674 A.2d 1038, 1041 (1996). (citations omitted) The nonmoving party, in this case the plain-

tiff, must come forward with evidence showing the existence of facts essential to her causes of action of breach of contract and bad faith. At the same time, the court in reviewing the motion must view the record in the light most favorable to the nonmoving party and all doubts as to the existence of a genuine issue of material fact must be resolved against the moving party. *Pennsylvania State University v. County of Centre,* 532 Pa. 142, 615 A.2d 303 (1992).

In support of her contract claim, the plaintiff cites section 1797(b)(1) and (4) of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S. 1701 et seq. Section (b)(1) allows an insurer to refer a payment claim to a peer review organization which evaluates the circumstances of the claim to determine whether the medical services rendered conform to professional standards of performance and are medically necessary. Section (b)(4) permits an appeal to the court for an insurer's refusal to pay for medical services and allows for treble damages if the insurer's conduct is found to be wanton.

There is no dispute that the plaintiff's medical bills have all been paid. Some were paid before suit was filed and others were paid after the IME report was completed following the onset of suit. The defendant maintains that the plaintiff's grounds for recovering for breach of contract vanished once all her bills were paid and there is authority for that position. *Klinger v. State Farm Mutual Automobile Insurance Co.,* 895 F. Supp. 709 (M.D. Pa. 1995).[4] We have closely reviewed the pleadings and the plaintiff's answer to the motion for summary judgment

---

4. Strictly speaking, the plaintiff's cause of action does not arise "in contract," but from the MVFRL, which is a statute.

and find that the plaintiff has not produced any evidence or advanced any compelling argument to the contrary. The defendant's motion for summary judgment will therefore be granted as to this claim.

## Bad Faith Claim

The plaintiff also seeks damages for bad faith. This claim arises under 42 Pa.C.S. §8371 which provides:

"In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorneys fees against the insurer."

"Bad faith" by an insurer is any frivolous or unfounded refusal to pay proceeds of an insurance policy, even if that refusal is not fraudulent. The term denotes conduct undertaken for a dishonest purpose and a breach of the duty of good faith and fair dealing through some motive of self-interest or ill will. *Woody v. State Farm Fire and Casualty Co.,* 965 F. Supp. 691 (E.D. Pa. 1997). A plaintiff must show that the insurer lacks "a reasonable basis" in its refusal to pay and that the insurer "recklessly disregarded its lack of reasonable basis in denying the claim." *Terletsky v. Prudential Property & Casualty Insurance Co.,* 437 Pa. Super. 108, 125, 649 A.2d 680, 688 (1994). The plaintiff asserts that the following conduct by the defendant demonstrates bad faith: The defendant refused to pay some medical bills and referred

them to peer review without a reasonable basis. The defendant relied on a defective peer review reconsideration report in continuing to refuse to pay for some bills. The defendant failed to timely submit the file for reconsideration. The defendant utilized a PRO with whom it was too closely associated, raising the question of whether that PRO could be truly objective in evaluating claims. Finally, the defendant paid all outstanding bills only after suit was filed.[5]

The defendant urges the court that use of the peer review process as permitted by section 1797(b)(1) of the MVFRL cannot as a matter of law constitute bad faith. We have previously rejected this argument, twice in this case and in two similar cases, based on the current state of authority which leaves open the possibility that an insured can bring an action for bad faith under 42 Pa.C.S. §8371 when an insurer utilizes the peer review process.[6] Our rejection of this argument in this case occurred in the context of preliminary objections. It would have been premature for us to dismiss the plaintiff's bad faith claim based solely on the pleadings. Now that the plaintiff has had the opportunity to develop a record through discovery, the question is whether she has produced evidence

---

5. The plaintiff also argues the defendant violated section 1797(b)(2) by relying on the conclusions of two PRO physicians whose areas of specialty were different from those of Dr. Bayer. This issue is raised here for the first time in the plaintiff's brief and therefore was not brought before the court in a timely manner.

6. Opinions filed September 13, 1995 and April 11, 1996 in this case; *Milton S. Hershey Medical Center v. State Farm Insurance Co.,* 21 D.&C.4th 62 (1992) (C.P. Franklin County); *Backstrom v. State Farm Insurance Co.,* A.D. 1997-219, C.P. Franklin County, January 26, 1998.

of facts essential to that cause of action. A review of the record forces us to answer that question in the negative.

The plaintiff alleges the defendant had no reasonable basis for referring some of her medical bills to the first peer review. What facts has the plaintiff adduced to support this allegation? The plaintiff deposed Beulah Kelliehan who worked as a claims handler for the defendant at the time the plaintiff's file was under review. Kelliehan was assigned the plaintiff's file, but only after suit was commenced in March of 1994. Another employee, Belinda Finley, was the claim handler first assigned to review the file. According to Kelliehan, Finley would have been the one to refer some of the bills to peer review to determine whether the medical services the plaintiff received were medically necessary under section 1797(b) of the MVFRL. Plaintiff's counsel questioned Kelliehan about the plaintiff's claim file at her deposition:

"Q: Will you be able to look at the first-party file today and explain some of the decisions that were made in this case?

"A: I'll do the best that I can, because I don't know the reasons why everybody did what they did." (Deposition testimony, p. 8.)

The plaintiff did not depose Belinda Finley and therefore her specific reason for referring the file to peer review is not part of the record. In the absence of her testimony, we have directly examined all the documents of record, including the deposition exhibits, but find no evidence whatsoever supporting the notion that the decision to send the plaintiff's file to the first peer review constituted bad faith.[7] It was the plaintiff's burden to

7. The 16 exhibits attached to Kelliehan's deposition and about which she was questioned are documents generated by the defendant, Claims Review Associates and Dr. Bayer during the claims review process.

come forward with specific evidence showing that a question of fact exists for a jury as to whether the defendant's conduct was unreasonable. We cannot send a case to a jury based on the mere speculation that there was something improper in the decision to refer bills to peer review. The plaintiff has not meet her burden on this issue.[8]

We are well aware of the principle, cited by the plaintiff, that oral testimony alone, either through testimonial affidavits or depositions of the movant or his witnesses, is generally insufficient to establish the absence of a genuine issue of material fact, even if the affidavits or depositions are uncontradicted. *Penn Center House Inc. v. Hoffman,* 520 Pa. 171, 553 A.2d 900 (1989); *Nanty-Glo Boro. v. American Surety Co.,* 309 Pa. 236, 163 A.2d 523 (1932). The plaintiff urges us not to grant summary judgment based on Kelliehan's deposition because it is for the jury to evaluate her credibility. Our discussion of Kelliehan's deposition should not be misconstrued as a blanket acceptance of its truthfulness or accuracy; credibility determinations are indeed the province of the jury, and Kelliehan does not have firsthand knowledge of the circumstances surrounding the determination to send the claim to a PRO. However, it is precisely for this reason that the plaintiff should have deposed Belinda Finley, the person who actually decided to refer the matter to peer review. It was the plaintiff's burden to produce some evidence showing that Finley's decision to send the file to peer review was a frivolous one and that she was mo-

---

8. The plaintiff could have sought leave of court to supplement the record with additional discovery or depositions in order to flesh out the factual record pursuant to Pa.R.C.P. 1035.3(b) and (c), but did not do so.

tivated by a dishonest purpose or ill will. We have no evidence before us in the record pointing to a conflict in the facts on this issue which the jury would need to resolve.

The plaintiff also alleges the insurer acted in bad faith because it referred her file to a PRO with whom it was too closely associated, thereby calling into question that PRO's ability to objectively review claims. The plaintiff elicited testimony from Kelliehan that the defendant maintained in/out boxes in its office specifically for Claims Review Associates. Kelliehan went on to testify, however, that four or five other PROs also maintained in/out boxes at the defendant's office during the time period in question. (Kelliehan deposition, pp. 10-11.) This evidence directly undercuts the assertion that the defendant had an unduly close relationship with Claims Review Associates. The plaintiff failed to produce any evidence to show the defendant acted in bad faith by using that PRO to evaluate her bills.

We are aware of the cases cited by the plaintiff which examine the relationship between a PRO and the insurer with whom it contracts. A three-judge panel in *Henninger v. State Farm Insurance Co.,* 719 A.2d 1074 (Pa. Super. 1998), reversed the trial court's grant of summary judgment to an insurer where the plaintiff had brought suit against the insurer for failure to pay for medical treatments which the plaintiff asserted were reasonable and necessary. The *Henninger* court held that summary judgment was improper where the insurer based its motion solely on the testimony of two physicians chosen by the PRO to conduct peer reviews of the plaintiff's claim for benefits. The court relied on the following language in

*Terminato v. Pennsylvania National Insurance Co.,* 538 Pa. 60, 645 A.2d 1287 (1994):

"A PRO is not a neutral body. While a PRO cannot be owned by or be otherwise affiliated with the insurance company (31 Pa. Code §68.3(d)), the law provides for the insurance company to select the PRO that will review the claim. The insurance company initially pays the PRO for its services. The insured plays no role in the selection process. Obviously, PROs have a strong financial incentive to appear fair in the eyes of the insurance company. Otherwise, the insurance company will take its business elsewhere. On the other hand, the PRO is not concerned with how the insured views the PRO because this will not affect its future business. Consequently, the PRO does not have the characteristics of an independent body for which the legislature would seek judicial deference." *Id.* at 68, 645 A.2d at 1291.

Based on this passage in *Terminato,* the *Henninger* court found it inappropriate to grant summary judgment because the plaintiff was entitled to have a jury assess the credibility of the physicians and their conclusions as to whether the plaintiff's medical treatments were reasonable and necessary.[9] Citing those cases, the instant

---

9. The issue in *Terminato* was whether an insured is required to seek reconsideration of an adverse peer review decision before bringing an action in common pleas court to recover benefits under an automobile insurance policy. The court held in the negative because the legislature did not intend for the doctrine of exhaustion of administrative remedies to apply to the peer review process.

"The peer review process [under section 1797(b)] is a mechanism through which an insurer may seek a professional assessment of the reasonableness and necessity of medical treatment in order to independently determine whether a claim should be paid or denied. It assists insurers in making an informed decision regarding a medical claim

plaintiff alleges she too is entitled to a jury trial on the issue of bad faith because the PRO used by the defendant was inherently biased in the defendant's favor.

Our close review of *Henninger* indicates that it does not support the plaintiff's claim and is in fact inapposite to the instant case. *Henninger* does not stand for the proposition that a plaintiff-insured alleging bad faith is entitled to proceed to trial merely because the insurer utilized the peer review process. Rather, that court merely followed *Terminato* in noting that the peer review process under section 1797 has an inherent bias toward the insurer and that a plaintiff-insured is entitled to have a jury evaluate the PRO's conclusion about the reasonableness and necessity of medical treatment. The Superior Court did not even address the issue of bad faith under section 8371 of the Judicial Code because the plaintiff did not challenge the trial court's grant of summary judgment as to that claim, and in fact they are separate inquiries. (See p. 1076 n.5.) There is no authority for the assertion that an insurer acts in bad faith merely by following the peer review process set out in the MVFRL. In response to a motion for summary judgment, the plaintiff must point to facts which specifically show the insurer used the peer review process in a manner constituting bad faith. He cannot simply rest on the idea that a PRO has an inherent bias in favor of the insurer in order to meet the defendant's summary judgment motion.

The instant plaintiff has adduced no specific evidence showing the defendant acted in bad faith by using the

---

by mandating review by a medical professional when the claim is challenged by the insurer." *Id.* at 71, 645 A.2d at 1292.

*Terminato* does not stand for the proposition that using peer review process in itself constitutes bad faith.

peer review process provided for in section 1797. Therefore, the defendant is entitled to summary judgment on the bad faith claim.[10]

As to the next issue, the plaintiff contends Dr. Wenner's reconsideration report was defective on its face and therefore the defendant acted in bad faith by relying on that report in refusing to pay bills. After reviewing the documentation submitted by the plaintiff's treating physicians, as well as Dr. Kamen's report, Dr. Wenner concluded there was a strong likelihood that factors predating the automobile accident were at play in the plaintiff's conditions. The plaintiff alleges Dr. Wenner should have confined himself to determining whether the treatments and bills were reasonable and necessary to treat the plaintiff's injuries but instead overstepped his peer reviewer role by engaging in a causation analysis, *i.e.,* by suggesting that the accident may not have caused all aspects of the plaintiff's condition.

As indicated above, section 1797(b)(1) authorizes insurers to refer payment claims to peer review to determine whether medical services rendered are medically necessary. Inherent in this inquiry is whether services for which the insured seeks benefits are necessary *in light of* the automobile accident; an insurer should not be expected to pay for services to treat conditions which arose from incidents or factors causally unrelated to that accident.

---

10. This approach is consistent with the opinion and order entered by the Honorable John R. Walker on June 14, 1999 in *Backstrom v. State Farm,* A.D. 1997-21, granting partial summary judgment in the defendant's favor because the plaintiff failed to adduce specific evidence showing an issue of material fact as to whether the defendant had acted in bad faith by using the peer review process.

An insurer's power to deny payment for the treatment of conditions causally unrelated to the accident has yet to be directly addressed by our appellate courts. In *Bodtke v. State Farm Mutual Automobile Insurance Co.,* 432 Pa. Super. 31, 637 A.2d 648 (1994), *reversed on other grounds,* 540 Pa. 540, 659 A.2d 541 (1995), the court stated that a PRO's decision that certain injuries of insured were not related to accident and were not covered under automobile policy was within scope of statute governing peer review plan for challenges to reasonableness and necessity of treatment. "[[T]he PRO's determination that] certain injuries treated were not related to the accident is simply another way of stating that they were not medically necessary." *Id.* at 35, 637 A.2d at 649. This language appears only as dicta, however. The issue was raised in *Terminato* (which was decided a few months after *Bodtke*) but was not addressed because the court's ruling was based on other issues. See *Terminato, supra* at 68 n.1, 645 A.2d at 1291 n.1.

Following the plaintiff's argument to its logical conclusion would produce an absurd result contrary to section 1797. For example, an insured suffering the lingering effects of a childhood illness who later sustained injuries in a car accident would be entitled under the plaintiff's logic to receive payment not only for conditions related to the accident, but also for conditions caused by the preexisting childhood illness. Such a result would undermine not only the legislative scheme, but also the inherent nature of automobile insurance policies, which are contracts specifically premised on the possibility that an insured might suffer an injury *from an automobile accident,* rather than some other kind of accident or as the result of a disease or illness. In the absence of appellate guidance,

we will rule in a manner consistent with the legislative scheme and the rationale underlying the contractual nature of automobile insurance policies.

The plaintiff also alleges the defendant failed to timely submit the plaintiff's claim to peer review for reconsideration. Dr. Kamen's PRO report was issued on September 21, 1993. Dr. Bayer requested reconsideration and the insurer asked him to provide any additional information he believed was relevant. Dr. Bayer prepared a lengthy letter dated October 26, 1993 which he sent to Belinda Finley for the reconsideration. In the introduction to his reconsideration report dated February 18, 1994, Dr. Wenner sets forth the records which he consulted in reaching his conclusions. In addition to Dr. Kamen's report and Dr. Bayer's letter, he reviewed a consultation report of one of the plaintiff's treating physicians, Dr. Peter G. Wallick M.D., dated December 20, 1993, and Dr. Bayer's handwritten notes of January 12, 1994. Dr. Wenner's report was issued just under five weeks after Dr. Bayer's last handwritten notes were made.

In her brief in opposition to the defendant's motion for summary judgment, the plaintiff states: "On February 18, 1994, nearly *five months* after the initial peer review, Dr. Earl J. Wenner conducted the reconsideration. The defendant's failure to timely submit this claim for reconsideration is in blatant disregard of 75 Pa.C.S. §1797 . . . ." (Page 8.) Section 1797(b)(2) provides that "An insurer, provider or insured may request a reconsideration of the PRO's initial determination. Such a request for consideration must be made within 30 days of the PRO's initial determination . . . ." Dr. Kamen issued his report on September 21, 1993. The defendant sent Dr. Bayer a copy of that report on or about October 21,

1993.[11] Dr. Bayer requested the defendant to seek reconsideration through his letter of October 21, 1993. We have combed the record but cannot find the precise date on which the defendant forwarded the plaintiff's file to Claims Review Associates or when Claims Review Associates forwarded the file to Dr. Wenner for his review. Without that information, which the plaintiff has the burden of producing, we are left with a record which indicates that an interval of only five weeks passed between the time the last documents were generated by the plaintiff's treating physicians and the issuance of Dr. Wenner's report, which logically he could not have completed until he had received and reviewed all relevant treatment information. The plaintiff cannot avoid summary judgment on this issue.

Finally, the plaintiff alleges the defendant acted in bad faith by paying all outstanding bills only after suit was filed. Beulah Kelliehan testified that the file was transferred to her after suit was filed and she assigned counsel to meet the complaint's allegations. Once suit was commenced, the defendant engaged Dr. Graham to conduct an independent medical examination. The defendant paid all outstanding bills upon receipt of Dr. Graham's report. Kelliehan identified several other individuals who worked on the file during the litigation phase and stated that she herself made no decisions as to when the outstanding bills should be paid.

Simply because Dr. Graham ultimately agreed with Dr. Bayer's initial finding that the plaintiff's injuries were related to the automobile accident does not constitute evidence that defendant refused in bad faith to pay cer-

---

11. Exhibit A attached to the plaintiff's answer to the motion for summary judgment.

tain benefits. The plaintiff could have ascertained whether there was something improper behind the delay in payment by deposing one or more of those individuals directly responsible for the timing of that decision. Again, in the absence of such evidence, we are left with nothing more than a speculation that the defendant's conduct was in bad faith and this is an inadequate basis on which to proceed to trial.

The plaintiff has not come forward with sufficient evidence of facts essential to her cause of action for bad faith to warrant sending the case to a jury. The record before us "lacks the beginnings of evidence to establish a material issue" of fact. *Ertel, supra.* The motion for summary judgment will be granted.[12] An appropriate order of court will be entered as part of this opinion.

### ORDER

Now, October 5, 1999, the defendant's motion for summary judgment as to the plaintiff's claims of breach of contract and bad faith is hereby granted.

---

12. Because we have granted the motion for summary judgment, there is no need for us to rule on the defendant's motions in limine which were filed concurrently.