Edward SCHAPPELL, D.C., On Behalf of Himself and All Others Similarly Situated

v.

MOTORISTS MUTUAL INSURANCE COMPANY, State Farm Automobile Insurance Company and GEICO Corporation, Appellants.

Superior Court of Pennsylvania.

Argued Aug. 31, 2004.

Filed Dec. 15, 2004.

Michael N. Onufrak, Philadelphia, for GEICO.

James T. Moughan, Philadelphia, for State Farm.

Daniel C. Levin, Philadelphia, for appellee.

Before: HUDOCK, KLEIN, JJ. and McEWEN, P.J.E.

KLEIN, J.:

¶ 1 Plaintiff Edward C. Schappell, a chiropractor, brings a class action against three insurance carriers. He alleges that while he ultimately was paid for services rendered to patients who were injured in automobile accidents and subject to the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), 75 Pa.C.S.A. § 1701 *et seq.*, he was paid beyond the 30 day payment period and therefore is entitled to bring a private action for interest as provided under the MVFRL. The defendant insurers claim that the MVFRL does not create a private right of action and that Schappell must first exhaust his administrative remedies. The trial court held that a private action for interest only may be brought. We disagree, and reverse.

¶ 2 Analysis of the relevant statutory sections reinforces the notion that the MVFRL is one of the most confusing statutes ever drafted. We are unaware of any comprehensive statutory scheme that manages to pack so many uncertainties in so few sections.[1]

¶ 3 This case involves the interplay between two sections of the MVFRL, section 1716 (regarding payments of benefits) and section 1797 (regarding charges for treatment).

¶ 4 Although section 1716 is titled as "Payment of benefits," it addresses the issue of overdue payments.

Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12% per annum from the date the benefits became due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.

75 Pa.C.S. § 1716.

¶ 5 A "benefit" or "first party benefit" is, for the purpose of this analysis, a medical

---

1. We do not mean to imply that the legislature was entirely remiss in the creation of the MVFRL. There have proven to be so many permutations to the wide variety of situations covered by automobile insurance law that it was undoubtedly nigh unto impossible to consider everything.

benefit. 75 Pa.C.S. § 1702. A "medical benefit" is further defined as "coverage to provide for reasonable and necessary treatment and rehabilitative services." 75 Pa.C.S. § 1712(1). The use of the word "benefits" does not precisely fit within the definition of that word provided.[2] Rather, we believe the first sentence means that payment for medical services rendered are overdue if not paid within 30 days of reasonable proof of the amount charged for those services (or alternatively, reasonable proof of the amount of actual medical services provided).[3]

¶ 6 The statute next tells us that "overdue benefits" (meaning late payment for reasonable and necessary treatment) carry a 12% per annum surcharge. If the bills are not paid within 30 days of reasonable proof (what defines reasonable proof is the subject of another lawsuit currently wending its way through the legal system), the insurer is **required** to pay a 12% premium. More than anything, this 12% fee appears to be an incentive for the insurers to pay the bills presented to it in a timely manner. It provides no direct benefit to the injured party as billing for first-party benefits is a matter handled directly between the provider and insurer. 75 Pa.C.S. § 1797(a).

¶ 7 The final sentence of this section is of particular note. In the event it is found that the insurer acted unreasonably in refusing to pay the benefits (bills) when due, the insurer shall pay not only the benefit (bill) and interest, but a reasonable attorney fee based on actual time expended. At first blush this might well be interpreted as an authorization to bring a lawsuit— "In the event the insurer is **found** to have acted in an unreasonable manner." But it raises the question: found by whom? The first impulse is to conclude by a court, which appears to be an implicit authorization to sue. However, in comparing section 1716 with section 1797, this initial impulse is shown to be incorrect.

¶ 8 The authorization to bring a lawsuit to collect an unpaid bill is found in section 1797(b)(4). It is Dr. Schappell's contention that his right to bring a lawsuit for the unpaid interest on his otherwise satisfied bills is found in this section. As noted above, section 1716 deals with overdue bills. Part of the confusion involved in this case is that while an unpaid bill is by definition overdue, an overdue bill is not necessarily unpaid, it may simply be late. This distinction is important.

> A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the reasonableness or necessity of which has not been challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages to the injured party.

75 Pa.C.S. § 1797(b)(4) Appeal to court.

¶ 9 This section, unlike section 1716, specifically allows the right challenge in court. It also specifically limits the right to challenge to a refusal to pay for treatment. As noted, an overdue bill may represent a bill that has been refused, so further investigation is needed.

> If, pursuant to paragraph (4), a court determines that medical treatment or

---

2. Trade the phrase "coverage to provide for reasonable and necessary treatment" for the word "benefits" as found at the beginning and end of the first sentence of this section. It does not quite make sense.

3. The meaning of reasonable proof of what is not at issue in this appeal.

rehabilitative services or merchandise were medically necessary, the insurer must pay to the provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees.

75 Pa.C.S. § 1797(b)(6) Court determination in favor of provider or insured.

¶ 10 It is apparent in comparing sections 1716 and 1797 that the legislature was addressing two distinct situations without an intended overlap. If the overdue payment referred to in section 1716 was intended to include an unpaid bill, as referred to in section 1797, the legislature would not have provided two separate remedies. Under section 1716 a medical provider is entitled to recover attorney's fees based upon actual time expended if, and only if, it is found the late payment was unreasonable. In section 1797, a medical provider is entitled to recover not only attorney's fees, but costs as well, and these damages are awarded automatically once the medical provider shows the bills are proper.

¶ 11 If section 1716 had been intended to include unpaid bills in the definition of overdue payment, this would mean that under section 1716 a provider could file a lawsuit. Upon winning the lawsuit (and this could only be done by a showing that the services provided were reasonable and necessary), and showing that the insurer was unreasonable in not paying, the provider would be able to also collect attorney's fees subject to actual time expended. However, if the medical provider merely showed that the treatment rendered was medically necessary (a lower quantum of proof) the medical provider is entitled to receive attorney's fees (not subject to actu-

al time expended) as well as costs. Thus, an unpaid bill under section 1716 requires the medical provider to show the insurer was acting unreasonably to collect the bill, but provides for lower damages. This makes no sense, and we cannot read section 1716 in this manner.[4]

¶ 12 An unpaid bill and an overdue bill are two separate considerations in the legislative scheme and the legislature provided two separate means of dealing with them. Section 1797 specifically deals with unpaid bills and overdue bills cannot be shoe-horned into this section.

¶ 13 We must return to section 1716 and the question raised earlier— "found by whom?" *Solomon v. United States Healthcare Systems of Pennsylvania, Inc.,* 797 A.2d 346 (Pa.Super.2002), reiterated the factors for determining whether a statute implicitly creates a private right of action.

[f]irst, is the plaintiff 'one of the class for whose especial benefit the statute was enacted,'—that is, does the statute create a ... right in favor of the plaintiff? Second, is there any indication of legislative intent, explicit or implicit, either to create such a remedy or to deny one? Third, is it consistent with the underlying purpose of the legislative scheme to imply such a remedy for the plaintiff?

*Id.* at 352 (*quoting Est. of Witthoeft v. Kiskaddon,* 557 Pa. 340, 733 A.2d 623, 626 (1999)).[5]

¶ 14 By referring to a finding of unreasonableness, the legislature was allowing some manner of redress to the medical provider who is paid late. In section 1797, the legislature demonstrated

4. The relevant language in sections 1716 and 1797 were enacted together, therefore 1 Pa. C.S. § 1933, instructing the courts to effect to the later language is inapplicable.

5. *Witthoeft,* in turn, derived the factors from *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975).

that it knew how to specifically allow for a right to private action to enforce a portion of the MFVRL. Yet the legislature did not specifically allow for that right in section 1716. That is the first indication that a private action is not the solution to this situation.

¶ 15 As a practical matter it also seems unlikely that the legislature intended to provide a private right of action. A determination of unreasonableness by a court, in and of itself, makes no sense. This implies that the bill has been paid, along with the required interest—leaving only whether the delay in payment was unreasonable as an unanswered question. This determination would require the filing of a complaint for declaratory judgment, as no other monetary damages are at issue. Yet in this situation, the only additional payment that could be had is the payment of attorney's fees. This is a patently absurd result and we will not interpret the statute in this manner.

¶ 16 Therefore, a finding of unreasonableness must be in conjunction with some other complaint. It cannot be a complaint for unpaid bills, as demonstrated above (this would render the unreasonableness finding superfluous, as attorney's fees and costs are automatically awarded when prevailing on the issue of unpaid bills) so the only possible situation left for a court to determine is the non-payment of interest. In the most extreme case, if an insurer does not pay interest on a $5,000 bill (typical limits of first-party benefits) for 90 days (an insurer has 90 days to determine whether to challenge a treatment through a PRO) at 12% per annum, this amounts to $150.00. In a less extreme example, unpaid interest on a $1,000 bill 30 days late amounts to $10.00. While it is not unthinkable to sue for $150.00, it seems unlikely that the legislature intended to encourage a spate of lawsuits for $10.00, especially when it limits the payment of attorney's fees to a finding on unreasonableness in delay of payment.

¶ 17 Dr. Schappell's action represents a proposed class action. We do not believe the legislature drafted this law intending class action lawsuits to be the primary method of enforcement. This would be greatly at odds with the stated intent of the MVFRL to lower insurance rates. Finally, if the legislature had intended private class actions as the method of seeking remedy for nonpayment of interest then it would not have limited the award of attorney's fees to actual time expended and then only after a finding of unreasonable behavior. Therefore, as a practical matter we reject the notion that the legislature intended to create a private right of action on this issue.

¶ 18 Looking at the above analysis in light of the *Solomon/Witthoeft/Cort* factors it appears that although section 1716 creates a right in favor of Dr. Schappell and those who may be similarly situated (the right to 12% interest on overdue bills), it does not appear that the statute was intended to create an implicit right to private action nor would the right to private action appear to fit the entire legislative scheme of the MVFRL, particularly in light of the stated purpose of reducing automobile insurance costs. Therefore, we must reject Dr. Schappell's argument that he is so entitled.

¶ 19 The legislature created the Department of Insurance and placed it in charge of "the execution of the laws of this Commonwealth in relation to insurance." 40 P.S. § 41. As part of that power, the Department has set forth the rules for filing complaints regarding first-party benefits. 31 Pa.Code § 69.26.

¶ 20 Dr. Schappell argues that even if the legislature and the Department of Insurance intended section 69.26 to apply to

this claim, paragraph (f) still reserves the right to file a complaint at law. Paragraph (f) states:

> This section does not limit or restrict any person with an interest in a medical claim payment from making a complaint to the Department or another governmental unit having jurisdiction over any party to a medical claim.

31 Pa.Code § 69.26(f). Because the legislature has not conferred jurisdiction for a claim for interest only to the courts, this paragraph cannot be read to give a right that does not otherwise exist.

¶ 21 If Dr. Schappell and those similarly situated are correct in their claim that these defendants have been denying small amounts of statutorily required interest to medical providers, this represents a serious charge. While each individual amount of interest may be small, a matter of 5 to 20 dollars, when added up over numerous claims, they could represent a significant windfall to the insurers. As such, and without commenting on the merits of Dr. Schappell's claim or the insurer's defense, we encourage the Department of Insurance to give this claim due attention.

¶ 22 As a result of the above analysis, we hold the trial court improperly denied summary judgment in favor of the defendants.

¶ 23 Order reversed. The case is remanded to the trial court for entry of an order granting summary judgment in favor of defendants. Jurisdiction relinquished.

¶ 24 McEWEN, P.J.E., files a Dissenting Statement.

---

6. The statute requires payment within 30 days of receipt of appropriate proof of the claim by the insurer, provided that the claims for un-

McEWEN, P.J.E., dissenting:

¶ 1 While the author of the majority opinion provides a perceptive expression of rationale, I am compelled to dissent from that erudite analysis of Sections 1716 and 1797 of the Motor Vehicle Financial Responsibility Law (MVFRL), because I believe the statute does bestow a legal right upon medical providers to recover interest on overdue payments from insurance companies. The medical providers provide medical treatment at reduced rates pursuant to the requirements of Section 1797 of the MVFRL, and in an obvious exchange for the imposition of these reduced fees, the legislature has determined that their properly filed claims are to be paid promptly.[6]

¶ 2 Section 1716 specifically provides, *inter alia:*

> Overdue benefits **shall bear interest** at the rate of 12% per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the **insurer shall pay**, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based on actual time expended.

75 Pa.C.S. § 1716 (emphasis supplied).

¶ 3 The majority concludes that despite the clear, legally enforceable duty of the carrier prescribed in Section 1716, the legislature could not have meant to sanction a court action for the interest due a medical care provider against an insurer writing motor vehicle coverages in Pennsylvania. The majority so concludes based upon findings that (1) "Section 1797 specifically deals with unpaid bills[,] and overdue bills cannot be shoe-horned into this section",

---

contested treatments have been properly documented. 75 Pa.C.S. § 1716,

and (2) the amounts which could be recoverable as interest are such that "it seems unlikely that the legislature intended to encourage a spate of lawsuits for $10.00, especially when it limits the payment of attorney's fees to a finding [of] unreasonableness in delay of payment."

¶ 4 However persuasive this rationale of the majority, I am compelled to a differing view, namely that Section 1797 was primarily drafted (1) to establish the maximum permissible charges medical providers could bill for treating patients injured in motor vehicle accidents, 75 Pa.C.S. § 1797(a), *see, e.g., Pittsburgh Neurosurgery Asso., Inc. v. Danner,* 733 A.2d 1279, 1283 (Pa.Super.1999), *appeal denied,* 561 Pa. 699, 751 A.2d 192 (2000), and (2) to create an administrative system to efficiently adjudicate challenges by insurers to the reasonableness or necessity of healthcare professionals' treatments, charges, products, or accommodations provided to individuals injured in motor vehicle accidents. 75 Pa.C.S. § 1797(b). The references to the courts in Section 1797(b)(4), (6) and (7), must, in my view, be read with reference to all of the provisions of Section 1797 and are specifically restricted to disputes involving the reasonableness or necessity of treatment. *See: Terminato v. Pennsylvania National Insurance Co.,* 538 Pa. 60, 70, 645 A.2d 1287, 1292 (1994) ("Nor does the statutory provision [1797(b)] provide a remedy for the nonpayment of medical benefits.")

¶ 5 Section 1716 on the other hand, requires that benefits be paid within 30 days of receipt of "reasonable proof". If there is a disagreement as to the reasonableness or the necessity for the services, the insurer must proceed pursuant to Section 1797. If there is no dispute as to the reasonableness or necessity for the treatment, but the bill is paid more than 30 days after the insurer receives "reasonable proof" of the claim, then pursuant to Section 1716, the medical care provider is owed 12% interest on the bill. While the 12% interest is mandatory and automatic, the court is given discretion to award "a reasonable attorney fee based upon actual time expended" ... **if** "the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits **when due** ...." 75 Pa. C.S. § 1716 (emphasis supplied).

¶ 6 The majority cites to, and appellant relies upon, the panel decision of this Court in *Solomon v. U.S. Healthcare Systems of Pennsylvania, Inc., et al,* 797 A.2d 346 (Pa.Super.2002), *appeal denied,* 570 Pa. 688, 808 A.2d 573 (2002), wherein a panel of this Court studied the Healthcare Act and concluded that summary judgment for the defendant insurer was properly entered on the plaintiffs' action seeking interest on uncontested medical bills paid more than 30 days after submission, because the statute did not specifically create a private cause of action. While the Motor Vehicle Financial Responsibility Law bears little resemblance to the statute at issue in *Solomon,* I must, most respectfully, differ with my distinguished colleagues who decided *Solomon,* since I believe that *Solomon* (1) misinterpreted the three-pronged test pronounced by the United States Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975),[7] and (2) overlooked the applicable provisions of the Statutory Construction Act[8] in reaching its decision. More specifically, I am mindful of the mandate of Section 1929 of

---

7. The three prong test enunciated by the United States Supreme Court in *Cort v. Ash,* 422 U.S. 66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), was adopted by our Supreme Court in *Estate*

*of Witthoeft v. Kiskaddon,* 557 Pa. 340, 346, 733 A.2d 623, 626 (1999).

8. *See* Act of December 6, 1972, No. 290 § 3, Pa.C.S. §§ 1501, et seq.

8

the Statutory Construction Act directing that "[t]he provision in any statute for a penalty or forfeiture for its violation **shall not be construed to deprive an injured person of the right to recover** from the offender damages sustained by reason of the violation of such statute." 1 Pa.C.S. § 1929 (emphasis supplied).

¶ 7 Nor am I persuaded by the majority that actions by healthcare providers for interest on properly submitted claims not paid within the requisite thirty (30) days would be for *de minimis* amounts. If a provider were to institute one suit each year against an insurer for all interest due on all claims which the insurer had failed to pay in timely fashion, substantial sums would likely be at issue. The website of the Pennsylvania Insurance Commission [9] provides data gathered on bill payment practices of managed care plans licensed in Pennsylvania, so as to ascertain the level of compliance with the 45–day payment requirement of the Quality Healthcare and Accountability and Protection Act (Act 68). The data collected by the Commission suggests that the failure to timely remit sums due may be a practice rather than an oversight on the part of certain insurers.[10] Thus, private actions to recover "interest only" claims will insure that the provisions of the statute are followed by insurers selling policies to Pennsylvania residents.

¶ 8 As I am convinced that the legislature clearly envisioned private actions by healthcare providers for interest due them under the statute, I would affirm the order entered by the trial court per the learned Judge John F. Cherry.

---

9. *See: www.insurance.state.pa.us* (PA Dept. of Insurance).

10. The report, while tabulating the late payments by the insurers, makes no mention of administrative action of any kind by the Insurance Commissioner against any insurers.