**Milton S. Hershey Medical Center v.
State Farm Insurance Co.**

*Bradley R. Bolinger,* for plaintiff.
*Rolf Kroll,* for defendant.

WALKER, *J.*, December 8, 1992—

FINDINGS OF FACT

Plaintiff, Linda S. Hershey, was injured in an automobile accident on November 8, 1990. Plaintiffs, Dr. F. Todd Wetzel and The Milton S. Hershey Medical

Center treated and provided services to Ms. Hershey. Dr. Wetzel and Hershey Medical Center submitted bills to Ms. Hershey's insurance carrier, defendant State Farm Insurance Company.

Pursuant to 75 Pa.C.S. §1797, defendant State Farm submitted the bills to a peer review organization to determine the necessity of treatment provided to Ms. Hershey. State Farm refused to pay certain medical expenses, asserting that the PRO deemed them unnecessary. In addition, State Farm refused to pay Ms. Hershey's wage loss benefits, which are presently accruing.

Plaintiffs requested a peer review reconsideration in accordance with 75 Pa.C.S. §1797(b)(2). Based upon the PRO's reconsideration report, State Farm again refused to pay the medical bills.

Plaintiffs filed this suit to recover the cost of medical treatment and services, as well as wage loss benefits, that the defendant refused to pay. This opinion addresses the following preliminary objections raised by the defendant:

(A) The court lacks subject matter jurisdication.

(B) The complaint lacks conformity to rule of law.

(C) The insured lacks standing.

(D) Punitive damages under 42 Pa.C.S. §8371 are not available in the instant case.

## DISCUSSION

The court will address each preliminary objection individually.

### A. *Subject Matter Jurisdiction*

Defendant asserts this court lacks subject matter jurisdiction because the defendant complied with the requirements of 75 Pa.C.S. §1797. Section 1797 provides

specific procedures to follow in reviewing the necessity of an insured's medical expenses. Defendant argues that compliance with these procedures renders a decision to deny payment of medical expenses final and unappealable. This court does not agree.

Section 1797 sets forth the following procedures for determining the necessity of medical care provided to an injured person:

"(b) Peer review plan for challenges to reasonableness and necessity of treatment.

"(1) Peer review plan.—Insurers shall contract jointly or separately with any peer review organization established for the purpose of evaluating treatment, health care services, products or accommodations provided to any injured person. Such evaluation shall be for the purpose of confirming that such treatment, products, services or accommodations conform to the professional standards of performance and are medically necessary. An insurer's challenge must be made to PRO within 90 days of the insurer's receipt of the provider's bill for treatment or services or may be made at any time for continuing treatment or services.

"(2) PRO reconsideration.—An insurer, provider or insured may request a reconsideration by the PRO of the PRO's initial determination. Such a request for reconsideration must be made within 30 days of the PRO's initial determination. If reconsideration is requested for the services of a physician or other licensed health care professional, then the reviewing individual must be, or the reviewing panel must include, an individual in the same specialty as the individual subject to review." 75 Pa.C.S. §1797(b)(1), (2).

Under the amended legislation, it is clear that an insured or a health care provider may appeal to the court an insurer's denial of medical benefits if the bills

were not submitted to a PRO. 75 Pa.C.S. §1797(b)(4). What is not clear, however, is whether an appeal to the court can be taken when the insurer denies medical benefits based upon a PRO's determination that they were medically unnecessary.

In the instant case, defendant refused to pay the medical bills because a PRO, initially and upon reconsideration, deemed certain treatment provided to be medically unnecessary. This court finds that the legislature did not intend for a PRO's determination to substitute for the judgment of the trial court.

If the court accepted defendant's interpretation, questions regarding the constitutionality of the legislation would also be raised. In *Lehman v. State Farm Insurance Co.,* 140 P.L.J. 78, 82 (1992), the court addressed this issue and concluded

"that the legislature did not intend for the court to treat a PRO determination in the same fashion as a common law or statutory arbitration award or as an adjudication of an independent agency."

The *Lehman* court reasoned that the "PRO is not a neutral body." *Id.* The insurance company chooses one of the PROs to review a claim and initially pays them. The financial relationship between the insurance company and the PRO creates a strong incentive for the PRO to ignore the concerns of the insured party. Moreover, there is no requirement that the health care provider or the insured be given notice of the PRO determination or the opportunity to submit evidence to the PRO. See *Id.*

This court views the PROs as merely hired guns for the insurance companies. The medical professionals comprising the PROs submit their opinions as to the necessity of the treatment provided without examining the insured party or hearing evidence submitted by the

health care providers or the insured. The court agrees with the rationale in *Lehman*. The legislature could not have intended for the PRO's determination of the medical necessity of treatment to displace the right to proceed in a court of law. Accordingly, the court denies defendant's preliminary objection asserting lack of subject matter jurisdiction.

### B. *Motion To Strike Complaint for Lack of Conformity to Law*

Defendant asserts that plaintiffs' cause of action is not contemplated by 75 Pa.C.S. §1797 and should be stricken for its lack of conformity to law. See Pa.R.C.P §1028(a)(2). For the reasons set forth regarding subject matter jurisdiction, this court finds that plaintiffs' cause of action is contemplated by 75 Pa.C.S. §1797 and denies the preliminary objection.

### C. *Insured's Standing*

Defendant asserts that plaintiff Linda Hershey, the insured, lacks standing to sue her insurance company for refusal to pay the health care providers for services rendered. The amended legislation states that health care providers

"May not bill the insured directly but must bill the insurer for a determination of the amount payable. The provider shall not bill or otherwise attempt to collect from the insured the difference between the provider's full charge and the amount paid by the insurer." 75 Pa.C.S. §1797(a).

Defendants argue that because Linda Hershey has no liability or financial responsibility to pay the medical expenses in question, she has no standing to seek payment from her insurance company. This court disagrees.

The "law of standing is generally articulated in terms of whether a would-be litigant has a 'substantial interest' in the controverted matter, and whether he has been 'aggrieved' or 'adversely affected' by the action in question." *Commonwealth Game Commission v. Department of Environmental Resources,* 521 Pa. 121, 128, 555 A.2d 812, 815 (1989).

Although the insured has no financial responsibility for past unpaid medical bills, she has a substantial interest in the pending litigation because of its possible effect on any treatment required in the future. If the court decides the previous treatment provided was unnecessary, the health care providers may be hesitant to provide continuing care to the insured.

The court denies defendant's preliminary objection because Ms. Hershey has standing in the instant litigation as a result of her substantial interest in continued medical treatment. This decision is in line with previous decisions on this issue. See *Lehman v. State Farm Insurance Co., supra* at 85; *Henry v. State Farm Insurance Co.,* no. 91-2594, 1992 U.S. Dist. LEXIS 4143 (E.D. Pa. Mar. 25, 1992). *Mitrick v. State Farm Mutual Automobile Insurance Co.,* no. 91-SU-04607-01, slip op. at 148 (C.P. York Dec. 24, 1991).

## D. *Punitive Damages Claim*

### 1. Medical Benefits

Defendant contends that the remedies provided in 75 Pa.C.S. §1797 to health care providers and insured relating to recovery of first-party medical benefits are exclusive and preclude the imposition of punitive damages under 42 Pa.C.S. §8371.

The amended legislation provides specific remedies to health care providers for an insurer's nonpayment

of medical benefits. If a court or a PRO determines that treatment provided to the insured was medically necessary, "The insurer must pay to the provider the outstanding amount plus interest at 12 percent, as well as the costs of the challenges and all attorney fees." 75 Pa.C.S. §1797 (b)(5)(6). These remedies are available only for insurance claims involving motor vehicle first-party medical benefits. See 75 Pa.C.S. §1797(a).

In addition, the injured party may receive treble damage for an insurer's wanton conduct, but only if the insurer refuses payment without submitting the claims to a PRO. The relevant section states:

"(4) Appeal to court.—A provider of medical treatment or rehabilitative services or merchandise or an insured may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise, the *reasonableness or necessity of which the insurer has not challenged before a PRO. Conduct considered to be wanton shall be subject to a payment of treble damages* to the injured party. 75 Pa.C.S. §1797(b)(4). (emphasis added)[1]

---

1. Section 1797(b)(4) has, in effect, been interpreted as allowing an appeal to court when a PRO has determined the treatment provided was medically unnecessary. See *supra* pp. 63-66 (courts have subject matter jurisdiction to hear claims for medical benefits notwithstanding an insurer's use of a PRO). This interpretation is based on due process concerns. The court opines that the same concerns are not present in a claim for treble damages pursuant to section 1797(b)(4). Thus, the reasoning utilized to allow a plaintiff to challenge a PRO's determination in a court of law cannot be extended to allow a treble damages claim when an insurer has submitted the claims to a PRO. Consequently, treble damages under section 1797(b)(4) are available only if an insurer refuses payment without submitting the claims to a PRO.

The legislature adopted 42 Pa.C.S. §8371 which applies more broadly to any action arising under an insurance policy. The court may award the following remedies if it determines that the insurer has acted in bad faith:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assert court costs and attorney fees against the insurer." 42 Pa.C.S. §8371.

Defendant asserts that the two statutes conflict, which requires the court to apply the more specific remedies applicable to motor vehicle claims set forth in section 1797(b). Plaintiffs contend the inconsistencies are reconcilable and that they should be able to pursue the bad faith claim for punitive damages under section 8371.

There is a split of authority over whether section 1797(b) provides the exlusive remedies for denial of first party medical benefits, thus prohibiting a claim for bad faith under section 8371. One line of cases held that a bad faith claim is not prohibited by section 1797(b). See generally *Henry v. State Farm Insurance Co., supra* (defendant unsuccessfully argued section 8371 did not apply to insurance contracts entered into prior to its enactment); *Knox v. Worldwide Insurance Group,* no. 94893 of 1991 (C.P. Allegheny, Mar. 20, 1992) (insurer may recover either treble damages under section 1797 (b) or punitive under section 8371). *Chamberlain v. State Farm Mutual Automobile Insurance Co.,* Civ. A. no. 90-7070, 1991 W.L. 108688 (E.D. Pa. June 13, 1991) (plaintiff alleged collaboration between insurer and PRO); *Mitrick v. State Farm Mutual Automobile Insurance Co., supra* (plaintiff alleged insurer submitted claim to particular PRO because of

PRO's preconceived notions regarding the soft tissue injuries).

Another line of cases has held that the specific procedures and remedies of section 1797(b) exclusively govern a claim for first-party medical benefits. See *Elliott v. State Farm Mutual Automobile Insurance Co.,* 786 F. Supp. 487, 493 (E.D. Pa. 1992); *Williams v. State Farm Mutual Insurance Co.,* 763 F. Supp. 121, 127 (E.D. Pa. 1991); *Riddell v. State Farm and Casualty Co.,* no. 1: CV-91-1461 (M.D. Pa. July 9, 1992); *Schmidt v. State Farm Mutual Automobile Insurance Co.,* no. 4748 S. 1991 (C.P. Dauphin July 9, 1992); *Danyo v. State Farm Insurance Co.,* no. 1:CU-91-1246 (M.D. Pa. Oct. 25, 1991); *Carson v. ITT Hartford Insurance Group,* no. 91-3113, 1991 U.S. Dist. LEXIS 10451 (E.D. Pa. July 24, 1991); *Danton v. State Farm Mutual Automobile Insurance Co.,* no. 91-0013, 1991 U.S. Dist. LEXIS 4621 (E.D. Pa. Apr. 4, 1991).

The following rule of construction governs the instant case:

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. §1933.

The treble damage remedy for wanton conduct provided for in section 1797(b)(9) is comparable to the bad faith punitive damage award in section 8371. To allow both simultaneously would result in a windfall to a plaintiff. However, treble damages are only available

if the insurer denies medical benefits without submitting the claims to a PRO. Consequently, if a plaintiff is prohibited from asserting a claim pursuant to section 8371 and the insurer had denied payment of medical bills based on a PRO determination, the plaintiff cannot recover punitive or treble damages. This leads to the conclusion that, as a matter of law, an insurer's use of a PRO negates the possibility that the insurer acted in bad faith in denying medical benefits. The court does not agree with this conclusion.

The purpose of the treble damage award is to encourage insurers to submit claims for medical benefits to a PRO. Use of a PRO is indicative of an insurer's lack of bad faith in its denial of medical claims. However, the mere act of submitting the claims to a PRO does not negate the possibility of bad faith on the part of the insurer. As alleged in *Mitrick,* an insurer may select a particular PRO because the insurer is aware of the PRO's preconceived notions regarding certain claims. In *Chamberlain* the court found that if the insurer had collaborated with the PRO, this could constitute bad faith.

Courts must be permitted to police the relationship between the insurers and PROS to ensure the procedures mandated by legislature are not being used to the disadvantage of the insured and health care providers. Prohibiting a plaintiff from proceeding under section 8371 because the claim has been submitted to a PRO would thwart legislature's goal of providing fair and efficient procedures to review insurance claims by precluding courts from hearing evidence of fraud, deceit, collaboration, "kickbacks," and other similar conduct that could constitute bad faith.

Plaintiff alleges that 1) the PRO used in the instant case has continuously provided negative peer review

reports to the defendant to maintain a steady source of business, 2) the PRO does a substantial amount of work for the defendant which created a strong financial interest to provide a biased peer review report, 3) this shows a pattern of abuse of the process, 4) the defendant has employed the PRO in bad faith, 5) the initial PRO determination does not comply with section 1797(b)(1) because it fails to address the medical treatment provided by Hershey Medical Center and Dr. Wetzel, and 6) the PRO reconsideration report in fact agrees with the health care provider's recommended treatment.

While the court believes that some of the plaintiff's allegations may be simply an attack on the procedures set forth by legislature, the court finds that the plaintiff should be permitted to proceed under section 8371. The court will determine whether there is sufficient evidence to submit the bad faith claim for punitive damages to the jury at the time of trial.

In short, the court finds that the inconsistencies between the statutes are reconcilable. Accordingly, defendant's motion to dismiss plaintiff's claim for punitive damages under 42 Pa.C.S. §8371 based upon bad faith denial of medical benefits is denied.

## 2. Wage Loss Benefits

Although not specifically raised by the parties, the court addresses the applicability of section 8371 to denial of wage loss benefits.

Wage loss benefits are not covered under section 1797.

Consequently, the remedies in section 8371 are available to the plaintiffs unless another statute supplants those remedies. In *Riddell v. State Farm Fire and Casualty Co., supra*, the court dismissed plaintiff's claim

for punitive damages under section 8371 for bad faith denial of wage loss benefits. The court found that the remedies provided under 75 Pa.C.S. §1716 were irreconcilably inconsistent with those provided in section 8371.

Section 1716 covers the payment of motor vehicle insurance benefits in general and provides the following remedies:

"Benefits are overdue if not paid within 30 days after the insurer receives reasonable proof of the amount of the benefits. If reasonable proof is not supplied as to all benefits, the portion supported by reasonable proof is overdue if not paid within 30 days after the proof is received by the insurer. Overdue benefits shall bear interest at the rate of 12 percent per annum from the date the benefits become due. In the event the insurer is found to have acted in an unreasonable manner in refusing to pay the benefits when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended." 75 Pa.C.S. §1716.

The *Riddell* court held that the particularized provisions of section 1716 govern the denial of wage loss claims under motor vehicle insurance policies.

This court disagrees and again cites to the pertinent language of 1 Pa.C.S. §1933.

"Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both." *Id.*

It should be noted initially that the interest payment provision in section 8371 irreconcilably conflicts with interest payment provision in section 1716. Thus, the more specific interest remedy in section 1716 governs

74

claims under motor vehicle insurance policies. However, section 1716 contains no provision regarding treble damages or punitive damages that conflicts with section 8371. Section 1716 does not address the situation where an insurer has acted in bad faith or wantonly, thus leaving the plaintiff without a remedy for such behavior which resulted in a denial of wage loss benefits unless a bad faith claim under section 8371 is permitted.

In conclusion, the court finds that the provisions in section 1716 are not in conflict with the punitive damages remedy for bad faith under section 8371. The statutes shall be construed to give effect to both. The court denies defendant's motion to dismiss plaintiff's claim for punitive damages based upon bad faith denial of wage loss benefits.

## ORDER

And now, December 8, 1992, the court denies defendant's preliminary objections alleging: (1) Lack of subject matter jurisdiction; (2) The complaint lacks conformity to rule of law; (3) The insured lacks standing. (4) Punitive damages under 42 Pa.C.S. §8371 are not available in the instant case.