### Slaby v. Nationwide Insurance

C.P. of Northumberland County, no. CV-96-348.

*L. Ullman,* for Nationwide Insurance.
*M. Welker,* for Slaby.

FEUDALE, *P.J.,* August 13, 1997—The factual essence of this case is an insurance bad faith claim by plaintiff against defendant. On June 26, 1993, plaintiff was involved in a motor vehicle accident when Helen Henderson allegedly failed to stop at a stop sign and collided with plaintiff's vehicle. Both plaintiff and Ms. Henderson were insured by defendant Nationwide. After the accident, plaintiff received medical treatment and sent the bills directly to defendant for payment under the first party provisions of her policy. In early 1994, defendant sought a peer review organization review of the reasonableness and necessity of plaintiff's continued treatment. Plaintiff alleges that the PRO reports indicated that plaintiff's treatment was medically necessary and that defendant still refused to pay. Defendant,

apparently, has a different interpretation of the PRO reports.

Defendant filed the instant preliminary objections to plaintiff's amended complaint. In reviewing preliminary objections, all facts that are well-pleaded, material, and relevant are considered as true. Additionally, the court may draw any reasonable inferences from those facts. In order to sustain a demurrer, it is essential that the face of the complaint indicates that its claims may not be sustained and that the law will not permit a recovery. If there is any doubt, the demurrer should be overruled. *Mellon Bank N.A. v. Fabinyi*, 437 Pa. Super. 559, 650 A.2d 895 (1994).

Through its preliminary objections, defendant argues that plaintiff is solely limited to the remedies provided in Pennsylvania's Motor Vehicle Financial Responsibility Law, specifically, 75 Pa.C.S. §1797. Section 1797 of the MVFRL provides a mechanism to review the medical necessity of claims submitted to an insurer and applies, in certain instances, when an insured seeks first party benefits from their insurer. As we understand the process, when a dispute occurs over the medical necessity of an insured's treatment, the insurer has two options. The insurer can either refuse to pay the claim outright or submit the claim to a PRO for review. If an insurer simply refuses to submit the claim to a PRO, an unsatisfied insured can proceed directly to court for redress. If the insurer submits a claim to the PRO, an unsatisfied insured can request reconsideration of the PRO determination *or* appeal to the court. 75 Pa.C.S. §1797; *Terminato v. Pennsylvania National Insurance Co.*, 538 Pa. 60, 645 A.2d 1287 (1994); *M.S. Hershey Medical Center v. State Farm Insurance*, 21 D.&C.4th 62, 68 (Franklin County 1992) (although section 1797 does not expressly authorize an appeal to the court

from a PRO determination, such an interpretation has been adopted based on due process grounds). Although only persuasive authority, it appears that the issue addressed in *Hershey* has not been specifically addressed by a higher court. However, *Hershey's* holding still continues to be implied in this area of the law. See *Terminato, supra.*

Under the MVFRL, if the court determines that an insurer refused to pay for treatment that was medically necessary, the insurer must pay the amount of the claim "plus interest at 12 percent, as well as the costs of the challenges and all attorney fees." 75 Pa.C.S. §1797(b)(6). If the insurer chose not to submit the claim to a PRO and in so doing its behavior is deemed to be "wanton," the insured shall be subject to payment of treble damages. 75 Pa.C.S. §1797(b)(4).

Plaintiff argues in the alternative that she is entitled to seek damages under the MVFRL and/or the more expansive damages provided in 42 Pa.C.S. §8371. Under section 8371, if a court determines that an insurer acted in bad faith, the court may:

"(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3 percent.

"(2) Award punitive damages against the insurer.

"(3) Assess court costs and attorney fees against the insurer."

Defendant argues that section 1797 specifically and exclusively provides a remedy if plaintiff can substantiate her allegations. Defendant contends that section 1797 is the exception to a more general statutory remedy provided by section 8371. The legislature has provided the following guidance when a general and a specific statute both appear to be applicable to the same matter:

"Whenever a general provision in a statute shall be in conflict with a specific provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the specific provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail." 1 Pa.C.S. §1933.

In this case, however, we do not share defendant's view and we are able to reconcile the MVFRL and 42 Pa.C.S. §8371. In reviewing case law concerning the co-application of these statutes, it appears that no higher court has addressed the specific issue presented before us. That particular issue is whether an insurer who is alleged to have misused the PRO process can be made to pay damages provided by section 8371. We find that public policy requires that the insurer can be held liable for damages under section 8371, including punitive damages, if they abuse the very process that was enacted to shield them.

Although it has no precedential value, *Barnum v. State Farm Mutual Auto Insurance Co.*, 430 Pa. Super. 488, 635 A.2d 155 (1993), *reversed and remanded without opinion*, 539 Pa. 673, 652 A.2d 1319 (1995), comes closest to addressing how the MVFRL and 42 Pa.C.S. §8371 are to be applied when both, arguably, appear to apply. In *Barnum,* Leroy Barnum was injured in an accident and submitted medical bills to be paid under his first party coverage with State Farm. State Farm questioned the necessity of Barnum's medical bills and submitted them to a PRO. The PRO determined that some of Barnum's medical treatment was *unnecessary* and State Farm refused to pay. Barnum then initiated

a civil action to recover damages allowed under section 8371.

State Farm filed preliminary objections in the nature of a demurrer and argued that (1) Barnum failed to exhaust his statutory remedies because his did not request reconsideration of the PRO review and (2) that section 8371 was *not* applicable for a claim which arose under the MVFRL. In addressing the first issue, the Supreme Court, in *Terminato v. Pennsylvania National Insurance Co., supra,* held that the doctrine of exhaustion of administrative remedies does not apply to the PRO procedure. Shortly thereafter, in accord with *Terminato, Barnum* was reversed and remanded without opinion. In so doing, the Supreme Court provided no guidance concerning the Superior Court's determination of the co-application of the MVFRL and section 8371, and the issue remains as to whether the Supreme Court would sustain or overrule the Superior Court's determination.

The Superior Court in *Barnum* noted the following concerning the workability of the MVFRL:

"The peer review process provides a strong incentive for insurance carriers to route disputed claims through this alternate dispute resolution process. Where the insurer denies a claim without first obtaining a PRO evaluation, the claimant may immediately commence a court action. If the court finds in favor of the claimant, the insurer becomes liable, in addition to the amount of the claim, for counsel fees, costs, and interest at the rate of 12 percent. Moreover, if the court finds that the insurer acted wantonly in denying a claim, treble damages may be awarded. Conversely, if the insurer uses the peer review process, its potential liability is limited to the amount of the claim plus interest." *Id.* at 493, 635 A.2d at 157.

We find implied in the last quoted sentence regarding limiting the insurer's potential liability the requirement that the insurance company must *properly* use the peer review process as a prerequisite to gaining a benefit from lowered liability.

There is case law supporting the proposition that the Supreme Court of Pennsylvania would decide the co-application of MVFRL and section 8371 in the same manner as did the Superior Court, *i.e.*, that the MVFRL provides the exclusive remedy. *Gemini Physical Therapy v. State Farm Mutual Automobile Insurance Co.*, 40 F.3d 63 (3d Cir. 1994). In that, *Gemini* cites the Superior Court's opinion in *Barnum* as persuasive authority, however, the Supreme Court's reversal of *Barnum* may lead one to question the correctness of *Gemini* and its progeny as a predictor of Pennsylvania law.

Nonetheless, even assuming that our Supreme Court would accept the logic of *Barnum* as the law in Pennsylvania, we believe that *Barnum* is factually distinguishable from the instant case. As we read *Barnum,* it appears that the Superior Court presumed that the insurance company used and followed the PRO in good faith. This being the case, we would agree that the MVFRL would be the applicable statute and the insurance company would be shielded from punitive damages provided in section 8371.

In our case, however, plaintiff alleges that defendant acted in bad faith by not following the PRO recommendation. More specifically, plaintiff alleges that the PRO reports indicate that the majority of plaintiff's treatment was medically necessary, but that defendant still refused to pay plaintiff's claims. It is also noteworthy to point out that Nationwide insures both parties who were involved in the underlying accident and that

the plaintiff in this case has filed a lawsuit alleging negligence against the other party. Plaintiff would like us to infer that defendant is financially motivated to keep plaintiff's medical expenses to a minimum. By making it difficult for plaintiff to get treatment, plaintiff may be unable to show a jury in the negligence case that she actively sought medical treatment and the true nature and extent of her injuries. This, most likely, would lower defendant's exposure in the negligence case. Based upon these facts, we are able to reconcile the MVFRL and section 8371 in the following manner.

We find that the MVFRL is not the exclusive remedy when an insured is alleged to have used the PRO process in bad faith. It goes against our concept of fundamental fairness that an insurance company could simply submit a disputed claim to a PRO, engage in either self-serving or intolerable behavior and, at the most, only be made to pay 12 percent interest, costs, and attorney's fees. Reading the plain language of 75 Pa.C.S. §1797(b)(4), the insured may not even be able to recover treble damages in this case. *M.S. Hershey Medical Center v. State Farm Insurance, supra* at 68 (treble damages are only available if the insurer does not use the PRO process).

At least one jurisdiction has held that section 8371 is designed to protect the insured from bad faith on behalf of the insurer whether or not the insurer uses the PRO process. *Pierce v. State Farm Insurance Co.*, 27 D.&C.4th 464, 470 (Lackawanna County 1994). Although *Pierce* would appear to hold that punitive damages would be available if the insurer acts in bad faith by not submitting a claim to a PRO, that issue is not before us for a determination. See also, *Signor v. United States Fidelity and Guaranty Co.*, 115 Dauph. 279 (1995) ("some misconduct on the part of the in-

surance company [that occurred] before the bills were submitted to the PRO" may be sufficient for punitive damages under section 8731).

We believe our interpretation of the law as applied to the facts of this case delicately balances the interests of the insured and the insurer in accord with public policy considerations. We interpret the interplay between the MVFRL and section 8731 to be the following. If the insurer uses the PRO process properly, its liability is limited to the amount of the claim with 12 percent interest, costs and attorney's fees. If the insurer does not use the PRO process, its liability *may* be limited to three-times that of using the PRO process. See *Hershey, Signor, Pierce, supra.* However, if the insurer misuses the PRO process, its liability is heightened to the amount of the claim with interest at the prime rate plus 3 percent, costs, attorney's fees, and punitive damages.

The above interpretation protects the insurer if it properly uses the PRO process. Through treble damages, it encourages the insurer to use the PRO process. Most significantly, if the insurer abuses the PRO process, it can be punished by being subjected to, among other things, punitive damages.

We rule summarily on defendant's remaining preliminary objections.

For the foregoing reasons, we enter the following:

## ORDER

And now, August 13, 1997, after consideration of briefs and oral argument of counsel, we enter the following:

(1) Defendant's preliminary objection to Count III as to whether the MVFRL is the exclusive remedy in this case is hereby denied.

(2) Defendant's preliminary objection to Counts I and II as to whether this court can assume equity jurisdiction is hereby denied.

(3) Defendant's preliminary objection to Count IV as to whether plaintiff has set forth sufficient pleading for fraud, misrepresentation, and deceit is hereby denied.

(4) Defendant's preliminary objection to Count V as to whether plaintiff can recover under the Code of Professional Responsibility is hereby granted.