**Robin PERKINS, Plaintiff**

v.

**STATE FARM INSURANCE COMPANY, Defendant.**

No. 3:08–CV–1084.

United States District Court, M.D. Pennsylvania.

Dec. 16, 2008.

James R. Carroll, Carroll & Carroll, Athens, PA, for Plaintiff.

Moira Clare Duggan, Bennett, Bricklin & Saltzburg, Philadelphia, PA, for Defendant.

## MEMORANDUM AND ORDER

JOHN E. JONES III, District Judge.

This matter is before the Court on the Motion to Dismiss (Doc. 46) of defendant State Farm Insurance Company ("State Farm"). For the reasons set forth below, the motion will be granted in part and denied in part.

## I. STANDARD OF REVIEW

State Farms moves to dismiss Counts II, III, and IV of the complaint under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. In considering a motion to dismiss pursuant to Rule 12(b)(6), courts "accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir.2008) (quoting *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 374 n. 7 (3d Cir.2002)).

A Rule 12(b)(6) motion tests the sufficiency of the complaint against the pleading requirements of Rule 8(a). Rule 8(a)(2) requires that a complaint contain a short and plain statement of the claim showing that the pleader is entitled to relief, "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 1964, 167 L.Ed.2d 929 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1965. A plaintiff must make "a 'showing' rather than a blanket assertion of an entitlement to relief", and "without some factual allegation in the complaint, a claimant cannot satisfy the requirement that he or she provide not only 'fair notice,' but also the 'grounds' on which the claim rests."

*Phillips,* 515 F.3d at 232 (citing *Twombly,* 127 S.Ct. at 1965 n. 3). "[A] complaint must allege facts suggestive of [the proscribed] conduct", and the "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Twombly,* 127 S.Ct. at 1965, 1969 n. 8. Therefore, "stating a claim requires a complaint with enough factual matter (taken as true) to suggest the required element." *Phillips,* 515 F.3d at 234 (quoting *Twombly,* 127 S.Ct. at 1965 n. 3).

On the other hand, "a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits." *Id.* at 231 (citing *Twombly,* 127 S.Ct. at 1964–65, 1969 n. 8). Rule 8 "does not impose a probability requirement at the pleading stage, but instead simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Id.* at 234.

## II. BACKGROUND

With this standard of review in mind, the following facts are derived from the complaint, accepted as true, and construed in the light most favorable to the plaintiff.

On January 21, 2005, Robin Perkins was struck by a motor vehicle while she was walking in a grocery store parking lot, resulting in injuries to her person. (Compl. ¶¶ 4–5.) At the time, Perkins was insured under an automobile policy issued by State Farm, which provided first-party medical coverage in the amount of $50,000. (*Id.* at ¶ 3, Ex. A.) Perkins received medical treatment for her injuries, including from Dr. Marsha Kestin, a chiropractor with whom Perkins continues to treat. (*Id.* at ¶¶ 6, 11.) Perkins made a claim to State Farm for the cost of this treatment, and initially, State Farm paid for treatment with Dr. Kestin. (*Id.* at ¶¶ 8–10.)

On September 6, 2007, State Farm sent a letter to Dr. Kestin indicating that it would not pay for any further treatment of Perkins after September 27, 2005 and requesting that Dr. Kestin reimburse, with 12% interest, $3,590.86 that it had paid for treatment of Perkins from January 26, 2006 to May 8, 2007. (*Id.* at ¶ 12, Ex. B.) State Farm's action was based on the peer review of Dr. Brian Tarola, another chiropractor who opined that Dr. Kestin's treatment of Perkins was not reasonable or necessary. (*Id.* at ¶¶ 13–14, Ex. C.)

Perkins's complaint in this action, originally filed in the Bradford County Court of Common Pleas, asserts causes of action for breach of contract (Count I), statutory bad faith (Count II), violation of the Pennsylvania Unfair Trade Practices and Consumer Protection Law (Count III), and fraud (Count IV).

State Farm timely removed the complaint to this Court and now moves to dismiss Counts II, III, and IV, and to strike certain prayers for relief under Count I and ¶ 17 of the complaint. Each argument is addressed in turn below.

## III. DISCUSSION

### A. Bad Faith Claim

Count II of the complaint asserts a claim for violation of Pennsylvania's insurance bad faith statute, 42 Pa.C.S.A. § 8371. State Farm argues that Perkins's bad faith claim must be dismissed because Pennsylvania's Motor Vehicle Financial Responsibility Law ("MVFRL") provides the exclusive remedy for Perkins's claim and preempts her claim under the bad faith statute.

The Pennsylvania bad faith statute established a private cause of action against an insurer that has acted in bad faith toward its insured, and provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2) Award punitive damages against the insurer.

(3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S.A. § 8371. The statute does not define "bad faith"; however, Pennsylvania courts have defined "bad faith" on the part of an insurer as:

> any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Terletsky v. Prudential Property and Casualty Ins. Co.*, 437 Pa.Super. 108, 649 A.2d 680, 688 (1994) (quoting Black's Law Dictionary 139 (6th ed. 1990)) (citations omitted); *see also Nw. Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 137 (3d Cir. 2005) (predicting that the Pennsylvania Supreme Court would define "bad faith" according to the definition set forth in *Terletsky* ).

The MVFRL requires automobile insurers to provide coverage for "reasonable and necessary medical treatment and rehabilitative services." 75 Pa.C.S.A. § 1712(1). If an insurer is found to have acted in an "unreasonable manner" in refusing to pay such benefits when due, the insurer must pay the benefits owed, interest at the rate of 12% per annum from the date the benefits become due, and a reasonable attorney fee. *Id.* § 1716; *see also id.* § 1798(b) ("In the event an insurer is found to have acted with no reasonable foundation in refusing to pay [first-party benefits] when due, the insurer shall pay, in addition to the benefits owed and the interest thereon, a reasonable attorney fee based upon actual time expended.").

The MVFRL also provides a mechanism by which an insurer may challenge the reasonableness and necessity of an insured's medical treatment. An insurer may submit an insured's medical bill to a peer review organization ("PRO") "for the purpose of confirming that such treatment ... conform[s] to the professional standards of performance and [is] medically necessary." *Id.* § 1797(b)(1). After the PRO's initial determination, the insurer, the insured, or the medical provider may request reconsideration. *Id.* § 1797(b)(2). While the PRO's determination is pending, the insurer need not pay the provider, and the insured may not be billed for treatment. *Id.* § 1797(b)(3). If a PRO determines that medical treatment was medically necessary, "the insurer must pay to the provider the outstanding amount plus interest at 12% per year." *Id.* § 1797(b)(5). If a PRO determines that a provider has provided unnecessary medical treatment or that future provision of such treatment will be unnecessary, the provider may not collect payment for the medically unnecessary treatment, and, if the provider has collected such payment, it must return the amount paid plus interest at 12% per year. *Id.* § 1797(b)(7). However, "[i]n no case does the failure of the provider to return the payment obligate the insured to assume responsibility for payment for the treatment, services or merchandise." *Id.*

If an insurer does not utilize the PRO process, an insured or a provider "may challenge before a court an insurer's refusal to pay for past or future medical treatment or rehabilitative services or merchandise." *Id.* § 1797(b)(4). If the court determines that treatment was medically necessary, "the insurer must pay to the

provider the outstanding amount plus interest at 12%, as well as the costs of the challenge and all attorney fees." *Id.* § 1797(b)(6). Moreover, in such a case, an insurer who engages in "[c]onduct considered to be wanton shall be subject to a payment of treble damages to the injured party." *Id.* § 1797(b)(4).

The Pennsylvania Supreme Court has not addressed whether the MVFRL preempts § 8371, and consideration of the issue has produced an array of conflicting opinions in Pennsylvania's state and federal courts. *See, e.g., Stephano v. Tri–Arc Fin. Servs., Inc.,* 2008 WL 625011, at *5 (M.D.Pa. Mar. 4, 2008) (recognizing conflict and collecting cases); *Olsofsky v. Progressive Insurance Co.,* 52 Pa. D. & C.4th 449, 465–72 (Pa. Ct. Com. Pl. Lackawanna Cty. 2001) (same). Moreover, as other courts have recognized, even the apparent split in authority "is difficult to define and sometimes mischaracterized. The developing case law addresses conflicts between varied combinations of effective statutes under various factual situations as well as other collateral issues. Thus, any inquiry must be fact-sensitive." *Conway–West v. State Farm Ins. Co.,* 19 Pa. D. & C.4th 84, 87 (Pa. Ct. Com. Pl. Monroe Cty. 1993).

The Pennsylvania Superior Court first addressed the potential conflict between § 8371 and the MVFRL in *Okkerse by Okkerse v. Prudential Property and Casualty Insurance Co.,* 425 Pa.Super. 396, 625 A.2d 663 (1993), where the plaintiff sought interest, attorney's fees, and punitive damages under § 8371 and interest and attorney's fees under provisions of Pennsylvania's former No–Fault Act which were predecessors to §§ 1716 and 1797(b). The

trial court found § 8371 and the provisions of the No–Fault Act to be irreconcilably inconsistent, and dismissed the plaintiff's § 8371 claim. The Superior Court reversed. Construing the statutes as required by 1 Pa.C.S.A. § 1933 [1], the court held:

> The two statutes do not conflict. Attorney's fees are assessed under the No-Fault Act if there is no foundation for a denial. Similarly, section 8371 provides for an award of attorney's fees for a bad faith insurance denial. Both statutes provide for the payment of interest on overdue claims-section 8371 requires that the claim be denied in "bad faith" before interest accrues. Section 1009.107(3) requires the absence of reasonable foundation for the denial. The fact that both statutes provide the same remedy for similar actions can hardly be viewed as a conflict. Finally, the imposition of punitive damages in section 8371 does not conflict with any provision of the No-fault Act.

*Id.* at 667. The court noted that a potential conflict that could arise if different calculations of interest and attorney's fees were resulted from application of both statutes. *Id.* In that case, however, the court held that the provisions of § 8371 must prevail because Act 6, which enacted § 8371, provided that "[a]ll other acts and parts of acts are repealed insofar as they are inconsistent with the act." *Id.* (quoting Act 1990–6, P.L. 11 (Feb. 7, 1990)).

Less than eighth months later, in *Barnum v. State Farm Mutual Automobile Insurance Co.,* 430 Pa.Super. 488, 635 A.2d 155 (1993), another panel of the Superior Court came to a different conclusion re-

---

1. That statute provides: "Whenever a general provision in a statute shall be in conflict with a special provision in the same or another statute, the two shall be construed, if possible, so that effect may be given to both. If the conflict between the two provisions is irreconcilable, the special provisions shall prevail and shall be construed as an exception to the general provision, unless the general provision shall be enacted later and it shall be the manifest intention of the General Assembly that such general provision shall prevail."

garding the interplay between § 8371 and the MVFRL. In *Barnum*, the plaintiff's insurer refused to pay some of his medical bills after a PRO determined that certain treatment was not medically necessary. Without seeking reconsideration of the PRO's determination under § 1797(b)(2), the plaintiff filed suit against the insurer seeking to recover the unpaid bills plus interest, attorney's fees, and punitive damages under § 8371. The trial court dismissed the complaint holding that the plaintiff had failed to exhaust his statutory remedies by seeking reconsideration by the PRO before bringing suit and that § 8371 was inapplicable to the plaintiff's claims which must proceed under the MVFRL. On appeal, the Superior Court affirmed both holdings. The court first held that "an insured cannot proceed in the courts until reconsideration of an unfavorable PRO evaluation has been sought." *Id.* at 157. Second, the court held that the interest, attorney's fees, and treble damages provisions of § 1797(b) "clearly are at variance with and in conflict with the general remedies set forth in" § 8371. *Id.* at 158. Finding that the two provisions could not be reconciled, the court held that "the specific provisions of 75 Pa.C.S. § 1797 must be deemed an exception to the general remedy for bad faith contained in 42 Pa.C.S. § 8371" and that § 1797 must be applied to claims for first party benefits under the MVFRL. *Id.* at 159.

Less than eight months after *Barnum* was decided, the Pennsylvania Supreme Court held in *Terminato v. Pennsylvania National Insurance Co.*, 538 Pa. 60, 645 A.2d 1287 (1994), that an insured is not required to seek reconsideration of an adverse PRO decision before initiating a court action to recover medical benefits under an automobile policy.

Less than four months later, the United States Court of Appeals for the Third Circuit briefly addressed the interaction between § 1797(b) and § 8371 in *Gemini Physical Therapy and Rehabilitation, Inc. v. State Farm Mutual Automobile Insurance Co.*, 40 F.3d 63 (3d Cir.1994). The Third Circuit found the statutory construction stated in *Barnum* to be convincing and predicted that the Pennsylvania Supreme Court would similarly rule on the matter. *Id.* at 67.

Two weeks later, however, the Pennsylvania Supreme Court reversed the Superior Court's decision in *Barnum* and remanded the case for further proceedings consistent with its decision in *Terminato*. *Barnum v. State Farm Mut. Auto. Ins. Co.*, 539 Pa. 673, 652 A.2d 1319 (1994).

Presented with this tableau of dissonant precedent, some courts have continued to hold that § 8371 and the MVFRL are irreconcilable and that § 1797(b) is the exclusive remedy for insureds alleging bad faith in the PRO process.[2] Many courts,

---

2. *See, e.g., Cronin v. State Farm Mut. Auto. Ins. Co.*, 2006 WL 3098473, at *2 (M.D.Pa. Oct. 30, 2006); *Schleinkofer v. Nat'l Cas. Co.*, 339 F.Supp.2d 683, 686–87 (W.D.Pa.2004); *Rudisill v. Continental Ins. Co.*, 2001 WL 1167498, at *2 (E.D.Pa. Sept. 13, 2001); *Gargiulo v. Allstate Ins. Co.*, 1997 WL 551794, at *1 (E.D.Pa. Aug. 20, 1997); *Seasor v. Liberty Mut. Ins. Co.*, 941 F.Supp. 488, 492–93 (E.D.Pa.1996); *Grevy v. State Farm Ins. Co.*, 1996 WL 107851, at *2–5 (E.D.Pa. Mar. 11, 1996); *Cohen v. Am. Int'l Ins. Co.*, 1996 WL 103793, at *3–4 (E.D.Pa. Mar. 7, 1996); *Stewart v. State Farm Mut. Auto. Ins. Co.*, 1996 WL 153546, at *2 (E.D.Pa. Apr. 3, 1996); *Serubo v. Home Ins. Co.*, 1995 WL 461274, at *2 (E.D.Pa. Aug. 3, 1995); *Bennett v. State Farm Fire & Cas. Ins. Co.*, 890 F.Supp. 440, 443 (E.D.Pa.1995); *Mahnke v. Maryland Cas. Co.*, 1995 WL 574371, at *2 (E.D.Pa. Sept. 25, 1995); *Grissinger v. Nationwide Mut. Ins. Co.*, 39 Pa. D. & C.4th 209, 213–16 (Pa. Ct. Com. Pl. Dauphin Cty. 1998); *Evans v. State Farm Ins. Co.*, 39 Pa. D. & C.4th 193, 200–01 (Pa. Ct. Com. Pl. Elk Cty. 1997); *Cohen v. State Farm Ins. Co.*, 32 Pa. D. & C.4th 525, 529–30 (Pa. Ct. Com. Pl. Monroe Cty. 1996); *Kuropatwa v. State Farm Mut. Auto. Ins. Co.*, 29

however, have held that while § 8371 is preempted by the MVFRL where an insured challenges only the denial of first-party medical benefits, an insured may raise a § 8371 claim based on allegations of bad faith conduct on the part of an insurer which goes beyond the scope of § 1797(b), such as claims involving contract interpretation or claims that the insurers did not properly invoke or follow the PRO process.[3]

Many of the decisions in this latter group rely heavily on the opinion of Judge Rendell in *Schwartz v. State Farm Insurance Co.*, 1996 WL 189839 (E.D.Pa. Apr. 18, 1996). In that case, the plaintiff medical provider requested payment from State Farm for treatment provided to its insured who had suffered injuries in an automobile accident. After submitting the bills to a PRO, State Farm refused to pay. The plaintiff sought payment of the bills, interest, and attorney's fees under §§ 1716 and 1798. The plaintiff also sought punitive damages under § 8371 for State Farm's alleged bad faith in using a biased PRO and using the PRO process to determine the causal connection between the accident

and the insured's injuries. As in this case, State Farm argued that the plaintiff could not state a claim under § 8371 because § 1797(b) provides the exclusive remedy against insurers who utilize the PRO process. The court rejected this argument.

The court acknowledged that *Barnum*, *Gemini*, and the line of similar precedent establishes that an insured may not seek relief under § 8371 where he is complaining of the denial of first-party benefits determined through the PRO process set forth in § 1797. The court held, however, that "[n]othing in *Barnum* or *Gemini* suggests that a bad faith insurance coverage claim under § 8371 is barred by § 1797 where the peer review process set out in § 1797, namely to determine the propriety of treatment and charges therefore, is not actually followed." *Id.* at *4. The court found that the plaintiff's claims that State Farm used a favored PRO and used the PRO process not to determine the reasonableness or necessity or treatment, but causation did not fall within the scope of § 1797, and therefore, were not preempted. *Id.* The court also held that, under 1 Pa.C.S.A. § 1933, there is no conflict be-

Pa. D. & C.4th 494, 502–04 (Pa. Ct. Com. Pl. Bucks Cty. 1995).

**3.** *See, e.g., Stephano*, 2008 WL 625011, at *5–6; *Harris v. Lumberman's Mut. Cas. Co.*, 409 F.Supp.2d. 618, 620–21 & n. 4 (E.D.Pa.2006); *Johnson v. Northland Ins. Co.*, 2005 WL 3488712, at *3 (W.D.Pa. Dec. 21, 2005); *Allstate Ins. Co. v. Am. Rehab & Physical Therapy, Inc.*, 330 F.Supp.2d 506, 510–11 (E.D.Pa. 2004); *Champlost Family Med. Practice, P.C. v. State Farm Ins.*, 2002 WL 31424398, at *2 (E.D.Pa. Oct. 29, 2002); *Dougherty v. State Farm Mut. Auto. Ins. Co.*, 2002 WL 442107, at *4–5 (E.D.Pa. Feb. 7, 2002); *Panameno v. State Farm Mut. Auto. Ins. Co.*, 1999 WL 320916, at *1 (E.D.Pa. May 19, 1999); *Gringeri v. Maryland Cas. Co.*, 1998 WL 212762, at *2–4 (E.D.Pa. Apr. 29, 1998); *Neun v. State Farm Ins. Co.*, 1996 WL 220980, at *2–3 (E.D.Pa. May 2, 1996); *Schwartz v. State Farm Ins. Co.*, 1996 WL 189839, at *2–9

(E.D.Pa. Apr. 18, 1996) (Rendell, J.); *Olsofsky*, 52 Pa. D. & C.4th at 476–77; *Pisarchick v. Progressive Ins. Co.*, 52 Pa. D. & C.4th 1, 12 (Pa. Ct. Com. Pl. Lackawanna Cty. 2001); *Smith v. Zarnick*, 47 Pa. D. & C.4th 353, 359–61 (Pa. Ct. Com. Pl. Butler Cty. 2000); *Hladinec v. Nationwide Ins. Co.*, 44 Pa. D. & C.4th 571, 574–75 (Pa. Ct. Com. Pl. Fayette Cty. 2000); *Carbaugh v. Prudential Property & Cas. Ins. Co.*, 43 Pa. D. & C.4th 63, 71–72 & n. 6 (Pa. Ct. Com. Pl. Franklin Cty. 1999); *Bacstrom v. State Farm Ins. Co.*, 40 Pa. D. & C.4th 330, 336–38 (Pa. Ct. Com. Pl. Franklin Cty. 1998); *DeFazio v. Nationwide Mut. Ins. Co.*, 35 Pa. D. & C.4th 221, 224–27 (Pa. Ct. Com. Pl. Lackawanna Cty. 1997); *Taylor v. Nationwide Ins. Co.*, 35 Pa. D. & C.4th 101, 103–110 (Pa. Ct. Com. Pl. Allegheny Cty. 1997); *Slaby v. Nationwide Ins.*, 39 Pa. D. & C.4th 98, 102–06 (Pa. Ct. Com. Pl. Northumberland Cty. 1997).

tween the general terms of § 8371 and the specific terms of § 1797(b), where an insurer does not comply with the specific provisions of § 1797, and in such a case, both provisions may be given effect. *Id.* at *5. In fact, allowing a bad faith claim where an insurer abuses the PRO process gives effect to the intent of both § 1797 and § 8371 by ensuring that insurers utilize the PRO process only for its stated purposes—determining the reasonableness and necessity of treatment—and preserving the broad remedial provisions enacted by the bad faith statute. *Id.* at *8. Finally, the court noted numerous Pennsylvania decisions that had come to similar conclusions. *Id.* at *5–8.

■ The Court finds persuasive the reasoning of *Schwartz* and the growing majority of cases that have reached similar holdings and will apply their reasoning to the case at hand. The pivotal question therefore becomes whether Perkins's allegations fall within the purview of § 1797, thus invoking the remedies established therein and precluding resort to § 8371. *See Stephano,* 2008 WL 625011 at *6. Some of the allegations made in support of Perkins's bad faith claim, such as State Farm's alleged failures to conduct a reasonable investigation, fairly evaluate coverage, or timely notify her of a denial of benefits (*see* Compl. ¶ 26), are nothing more than a challenge to the denial of first-party benefits and would fall under § 1797. However, Perkins's bad faith claim is also premised upon the allegation that State Farm engaged a PRO that does substantial work for State Farm and thus has a financial interest in providing a biased determination, and that the PRO has continuously provided negative peer review reports to State Farm and other insurers to maintain their business. (Compl. ¶ 25.) These allegations of abuse of the PRO process are not within the scope of § 1797, and courts have repeatedly held that such allegations state a claim under § 8371. *See, e.g.,*

*Schwartz,* 1996 WL 189839 at *4 (holding allegation, inter alia, that insurer used favored PRO state bad faith claim); *Carbaugh v. Prudential Property & Cas. Ins. Co.,* 43 Pa. D. & C.4th 63, 71–72 (Pa. Ct. Com. Pl. Franklin Cty. 1999) (stating it would have been premature to dismiss plaintiff's bad faith claim based on allegation, *inter alia,* that insurer "utilized a PRO with whom it was too closely associated, raising the question of whether that PRO could be truly objective in evaluating claims"); *Bacstrom v. State Farm Ins. Co.,* 40 Pa. D. & C.4th 330, 338 (Pa. Ct. Com. Pl. Franklin Cty. 1998) (holding that insurer's use of "a captive reviewer with a financial interest in providing State Farm with biased reviews" stated a bad faith claim); *Milton S. Hershey Med. Ctr. v. State Farm Ins. Co.,* 21 Pa. D. & C.4th 62, 71 (Pa. Ct. Com. Pl. Franklin Cty. 1992) (stating that insurer's selection of a particular PRO because of the PRO's preconceived notions regarding certain claims or insurer's collaboration with PRO could constitute bad faith); *Mitrick v. State Farm Mut. Auto. Ins. Co.,* 13 Pa. D. & C.4th 540, 543–44 (Pa. Ct. Com. Pl. York Cty. 1991) (holding allegation, *inter alia,* that insurer "selected a PRO that because of its preconceived notions would not do a legitimate review" stated bad faith claim). Perkins's allegations, although thin, suffice to state a claim under § 8371, and therefore, State Farm's motion to dismiss Perkins's bad faith claim will be denied.

**B. Consumer Protection Law Claim**

■ Count III of the complaint asserts a claim for violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("CPL"), 73 Pa.C.S. § 201–1, *et seq.* Under the CPL, a person who purchases goods may bring a private action to recover damages caused by certain enumerated "unfair methods of competition" and "unfair or deceptive acts or practices."

73 Pa.C.S. §§ 201–3, 201–2(4), 201–9.2. However, "only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the Unfair Trade Practices and Consumer Protection Law, and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." *Horowitz v. Fed. Kemper Life Assur. Co.,* 57 F.3d 300, 307 (3d Cir. 1995) (citing *Gordon v. Pa. Blue Shield,* 378 Pa.Super. 256, 548 A.2d 600, 604 (1988)).

State Farm argues that the gravamen of Perkins's complaint is that State did not pay her medical bills, and that this allegation amounts only to nonfeasance rather than the malfeasance required to state a claim under the CPL. State Farm's refusal to pay benefits is not Perkins's sole allegation, however. She alleges that State Farm intentionally submitted her medical bills to a biased PRO knowing that it would receive a determination as to the reasonableness and necessity of treatment which would allow it to deny her claims. At this stage of the proceedings, the Court must accept this allegation as true, and such an assumption establishes State Farm's improper performance sufficient to state the type of malfeasance prohibited by the CPL. *See Lites v. Great Am. Ins. Co.,* 2000 WL 875698, at *3–5 (E.D.Pa. June 23, 2000) (noting the difference in reviewing a CPL claim on a motion to dismiss and a motion for summary judgment and collect-

ing cases finding allegations sufficient to state a CPL claim against an insurer).

■ Perkins's CPL claim will be dismissed, however, because State Farm's alleged conduct does not rise to the level of an unfair or deceptive practice as defined under § 201–2(4). "In addition to twenty specifically enumerated practices, the [CPL] provides that 'engaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding' constitutes an 'unfair or deceptive act or practice.'" *Colaizzi v. Beck,* 895 A.2d 36, 39 (Pa.Super.Ct.2006) (quoting 73 P.S. § 201–2(4)(xxi)). Although her complaint only asserts a violation of the CPL generally, in her brief in opposition to the motion to dismiss, Perkins argues that State Farm's conduct violates this provision of the CPL. "In order to establish a violation of this catchall provision, a plaintiff must prove all of the elements of common-law fraud."[4] *Id.* (quoting *Sewak v. Lockhart,* 699 A.2d 755, 761 (Pa.Super.Ct.1997)). As will be discussed below, Perkins has not stated a common-law fraud claim, and therefore, her allegations do not state a claim under the catchall provision of the CPL.

**C. Fraud Claim**

■ Count IV of the complaint asserts a claim for common-law fraud. To establish common law fraud, a plaintiff must prove: "(1) misrepresentation of a material fact; (2) scienter; (3) intention by the declarant

---

4. Although there is some Pennsylvania case law which suggests that the 1996 amendments to the CPL eliminated the requirement that a plaintiff prove the elements of fraud to state a claim under the catchall provision, *see, e.g. Commonwealth v. Percudani,* 825 A.2d 743, 746–47 (Pa.Commw.Ct.2003), the Pennsylvania Superior Court has continued to require such proof despite acknowledging the amendments to the CPL, *see, e.g., Skurnowicz v. Lucci,* 798 A.2d 788, 794 (Pa.Su-

per.Ct.2002); *Booze v. Allstate Ins. Co.,* 750 A.2d 877, 880 & n. 6 (Pa.Super.Ct.), *appeal denied,* 564 Pa. 722, 766 A.2d 1242 (2000). Moreover, a recent Third Circuit opinion casts doubt on the cases holding that because of the 1996 amendments, plaintiffs need not prove all the elements of common-law fraud, and holds that, at the very least, private plaintiffs must allege justifiable reliance under the CPL. *Hunt v. U.S. Tobacco Co.,* 538 F.3d 217, 224–27 (3d Cir.2008).

to induce action; (4) justifiable reliance by the party defrauded upon the misrepresentation; and (5) damage to the party defrauded as a proximate result." *Id.* Under both federal and Pennsylvania rules, fraud must be plead with particularity. Fed. R.Civ.P. 9(b); Pa. R. Civ. P. 1019(b).

In this case, Count IV of the complaint merely incorporates the preceding paragraphs and recites the elements of fraud. These allegations fall far short of the pleading requirements for fraud. Moreover, it is plain that Perkins has simply attempted to recast her breach of contract claim as a fraud claim. She does not state with particularity State Farm's alleged misrepresentations, but alleges only that State Farm's failure to comply with the terms of its insurance contract is fraud. The "gist of the action" doctrine requires dismissal of a fraud claim where that claim is inextricably intertwined with a contract claim. *See eToll, Inc. v. Elias/Savion Advertising, Inc.,* 811 A.2d 10, 14–20 (Pa.Super.Ct.2002). In this case, any alleged fraud concerns only State Farm's performance of its contractual duties, and Perkins's fraud claim is collateral to and dependent upon her breach of contract claim. Therefore, the gist of the action doctrine requires dismissal of the fraud claim. *Id.* at 19.

### D. Prayer for Relief

Count I of the complaint asserts a claim for breach of contract and seeks as relief "payment of medical bills and prescriptions, with interest at a rate of 12% per year, penalties as provided by statute and reasonable and actual attorney's fees, costs and any other relief this Court deems appropriate." State Farm moves to strike Perkins's requests for "penalties as provided by statute" because there are no statutory penalties for breach of contract and "any other relief this Court deems appropriate" because equitable relief is inappro-

priate in this contract action. Perkins does not dispute the striking of these prayers for relief, and therefore, the *ad damnum* clause of Count I of the complaint will be deemed stricken to the extent it seeks "penalties as provided by statute" or equitable relief.

### E. Paragraph 17

Finally, State Farm also seeks to strike in its entirety paragraph 17 of the complaint which states:

> Defendant has undertaken a course of action which is wanton and reckless, having been designed to unilaterally, and without justification, refuse to honor Plaintiff's claim for medical benefits and cause Plaintiff to become personally responsible for medical bills arising out of maintenance or use of a motor vehicle, in contradiction to the terms of the insurance policy, the Pennsylvania Motor Vehicle Responsibility Law, and the case law of the Commonwealth of Pennsylvania.

(Compl. ¶ 17.) State Farm takes issue, however, only with the statement that it caused Perkins to become personally responsible for her medical bills, arguing that under § 1797, a medical provider may not collect payment from an insured for treatment that a PRO has determined was unnecessary. *See* 75 Pa.C.S. §§ 1797(a), (b)(3), (b)(7).

State Farm's motion to strike paragraph 17 will be denied. First, the allegations of Perkins's complaint, which must be accepted as true, are that her treatment was in fact reasonable and necessary and that the PRO's determination to the contrary was incorrect. Therefore, the portions of § 1797 relied on by State Farm are inapplicable. Moreover, as a practical matter, because State Farm has denied payment for treatment which Perkins states she is continuing to undergo and will continue to

undergo in the future, she will be personally responsible for the bills for such treatment. There is no basis to strike paragraph 17.

## IV. CONCLUSION

For the foregoing reasons, State Farm's motion to dismiss will be granted in part and denied in part. Perkins's bad faith claim under § 8371 will be allowed to proceed; however, her CPL and fraud claims will be dismissed. "[I]f a complaint is subject to a Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips,* 515 F.3d at 245 (citing *Alston v. Parker,* 363 F.3d 229, 235 (3d Cir.2004)). In this case, no amendment could cure the defects in Perkins's CPL and fraud claims, and therefore, these claims will be dismissed with prejudice. In addition, Perkins's prayer for relief under Count I will be stricken to the extent it seeks penalties as provided by statute or equitable relief, but paragraph 17 of the complaint will not be stricken.

**NOW, THEREFORE, IT IS HEREBY ORDERED THAT:**

1. Defendant's Motion to Dismiss (Doc. 46) is GRANTED in part and DENIED in part to the following extent:

   a. Plaintiff's CPL (Count III) and fraud (Count IV) claims are DISMISSED with prejudice;

   b. Plaintiff's prayer for relief under Count I is stricken to the extent it seeks penalties as provided by statute or equitable relief; and

   c. Defendant's Motion to Dismiss is otherwise DENIED.